IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| **METROPOLITAN GROUP** ) | |
| **PROPERTY AND CASUALTY** ) | |
| **INSURANCE COMPANY,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION 09-0361-WS-B |
| ) | |
| **PATRICIA THOMPSON,** ) | |
| ) | |
| Defendant. ) | |

**ORDER**

This matter comes before the Court on defendant's Motion to Dismiss (doc. 5), as well as on Plaintiff's Brief in Support of Subject Matter Jurisdiction (doc. 12).[1]

**I.    Background.**

This action is the second of two lawsuits arising from an insurance coverage dispute between plaintiff, Metropolitan Group Property and Casualty Insurance Company ("Metropolitan"), and defendant, Patricia Thompson.  During the relevant time period, Metropolitan had issued a policy of automobile insurance to Thompson's mother and stepfather in Marengo County, Alabama.  Thompson was not listed as an insured driver on the policy, nor was the vehicle she ordinarily and customarily drove (a 1989 Ford Taurus owned by her mother) listed as an insured vehicle.  On or about April 8, 2007, Thompson was injured in Meridian, Mississippi when her vehicle collided with, or was struck by, a vehicle driven by non-party John Morvant.  Thompson was driving the 1989 Ford Taurus at the time of the accident.[2]  Thompson

---

[1]    In a Show Cause Order (doc. 11) entered on October 28, 2009, the undersigned made allowance for defendant to be heard on the jurisdiction issue after the submission of plaintiff's brief.  Defendant failed to file a memorandum within the prescribed time frame.

[2]    Thompson has alleged in the underlying state-court litigation that the injuries she sustained in the accident include bruises, contusions and abrasions; a severe arm injury; and injuries to her head, neck, back and other areas.  (Doc. 1, Exh. A, at ¶ 5.)

made a claim for underinsured motorist benefits under the policy; however, Metropolitan denied coverage pursuant to Exclusion G, which excluded from coverage "a relative who owns, leases or has available for their regular use, a motor vehicle not described in the Declarations."

On March 3, 2009, Thompson filed suit against Metropolitan in the Circuit Court of Marengo County, Alabama (the "Marengo County Action"), asserting causes of action for breach of contract (failure to pay UM/UIM benefits) and bad faith. (Doc. 1, Exh. A.) With respect to the breach of contract claim, Thompson's Complaint specified that she demanded compensatory and punitive damages against Metropolitan "in the amount of $20,000.00 plus cost [*sic*] of Court." (Doc. 1, Exh. A at 2.) With respect to the bad faith claim, Thompson's Complaint specified that she demanded "compensatory and punitive damages in the amount of $54,999.00 plus cost [*sic*] of Court." (*Id.* at 4.) Thus, the total sum of compensatory and punitive damages claimed by Thompson against Metropolitan in the Marengo County Action is $74,999. As Metropolitan concedes, the implications of Thompson's damages allegations are that the state-court action cannot be removed to federal court. (Doc. 12, at 3.)[3]

On June 18, 2009, three and a half months after the Marengo County Action commenced, Metropolitan brought its own lawsuit against Thompson in this District Court arising from the same underlying facts and circumstances. In its Complaint for Declaratory Judgment (doc. 1), Metropolitan seeks a declaration that (a) Thompson is not entitled to benefits under the policy, (b) her claim is not covered because she is not an "insured" under the policy, and (c) her claim is barred by Exclusion G. (Doc. 1, at ¶ 11.) Metropolitan's Complaint would base federal jurisdiction on 28 U.S.C. § 1332, on the ground that "diversity of citizenship exists between the Plaintiff and the Defendant, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs." (Doc. 1, at ¶ 3.)

There are two sets of legal issues presented for disposition at this time. First, the undersigned *sua sponte* questioned the existence of subject matter jurisdiction via Show Cause

---

[3] The Marengo County Action remains pending today, although the Court understands that Metropolitan filed a motion to dismiss in that case, asserting that certain of Thompson's claims are premature because there are bona fide disputes as to her legal entitlement to damages and the extent of her damages. The most current information provided by the parties is that the motion to dismiss has not yet been ruled on.

Order (doc. 11) entered on October 28, 2009.[4]  Second, Thompson filed a Motion to Dismiss requesting dismissal of this federal action pursuant to, *inter alia*, the abstention principles outlined in *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328 (11th Cir. 2005).  The parties having been given a full and fair opportunity to brief their positions on both issues, they are ripe for disposition at this time.

## II.     Subject Matter Jurisdiction.[5]

The critical jurisdictional question identified by the Show Cause Order is whether the $75,000 amount in controversy threshold required for § 1332 jurisdiction is satisfied.  Where, as here, a plaintiff seeks declaratory relief, "the amount in controversy is the monetary value of the object of the litigation from the plaintiff's perspective."  *Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003) (citation omitted).  "Because the instant suit involves only insurance coverage issues as they relate to the underlying state court action, the court must look to the amount in controversy in the underlying state court suit to determine the amount in controversy for the purposes of diversity jurisdiction."  *State Farm Fire & Cas. Co. v. Knoblett*, 561 F. Supp.2d 1256, 1257 (N.D. Ala. 2008).[6]

---

[4]     The Show Cause Order was entered in accordance with the well-established Eleventh Circuit directive that "[f]ederal courts are obligated to inquire into subject-matter jurisdiction *sua sponte* whenever it may be lacking."  *Williams v. Chatman*, 510 F.3d 1290, 1293 (11th Cir. 2007) (citation and internal quotation marks omitted).

[5]     The analysis properly begins with the jurisdiction question, rather than the abstention question.  After all, if federal subject matter jurisdiction does not exist, then this Court is powerless to proceed further and must immediately dismiss the Complaint without reaching the *Ameritas* abstention issues raised by Thompson.  *See, e.g., Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1261 (11th Cir. 2000) (when subject matter jurisdiction is deemed lacking, "the court's sole remaining act is to dismiss the case for lack of jurisdiction"); *University of South Alabama v. American Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999) ("once a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue").  As such, the abstention issue is not properly considered unless and until the Court is satisfied that jurisdiction lies.

[6]     *See also Hartford Ins. Group v. Lou-Con Inc.*, 293 F.3d 908, 911 (5th Cir. 2002) ("in declaratory judgment cases that involve the applicability of an insurance policy to a particular occurrence, the jurisdictional amount in controversy is measured by the value of the underlying claim") (citations and internal quotation marks omitted); *Budget Rent-A-Car, Inc. v. Higashiguchi*, 109 F.3d 1471, 1473 (9th Cir. 1997) ("Because the applicability of Budget's

In determining whether the amount in controversy in the Marengo County Action satisfies the jurisdictional threshold for purposes of this declaratory judgment action, it is proper to import principles from the removal context, which both the Eleventh Circuit and other courts have deemed analogous to the declaratory judgment setting.  *See, e.g., Federated Mut.*, 329 F.3d at 807 n.1 (opining that the contexts of removal and declaratory judgment are analogous as to amount in controversy principles); *St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998) ("Although most of our caselaw regarding § 1332's amount in controversy requirement has arisen in the context of removal ..., we find the procedures developed in those cases to be instructive in the converse context of declaratory judgment actions"); *Knoblett*, 561 F. Supp.2d at 1258 ("case law addressing the jurisdiction amount in the removal context is analogous to case law addressing the jurisdictional amount in a declaratory judgment").[7]

In light of the removal analogy, it is the amount-in-controversy allegations and

---

liability coverage to a particular occurrence is at issue, the amount in controversy is the value of the underlying potential tort action."); *Rasberry v. Capitol County Mut. Fire Ins. Co.*, 609 F. Supp.2d 594, 601 (E.D. Tex. 2009) ("in declaratory judgment actions involving the applicability of an insurance policy to a particular occurrence, amount in controversy is measured by the value of the underlying claim rather than the face amount of the policy"); *State Farm Fire & Cas. Co. v. Corry*, 324 F. Supp.2d 666, 669 n.3 (E.D. Pa. 2004) ("In a declaratory judgment action regarding an insurance contract, the amount in controversy is determined by assessing the value of the underlying legal claims for which insurance coverage is sought.") (citation and internal quotation marks omitted); *American Standard Ins. Co. of Wisconsin v. Rogers*, 123 F. Supp.2d 461, 465 (S.D. Ind. 2000) ("This suit relates to [insurer]'s duty to defend and indemnify with respect to a particular accident ..., so we must examine the underlying claim to determine the amount in controversy.").

[7]  *See also Auto-Owners Ins. Co. v. Scott*, 2009 WL 3011244, *2 n.1 (M.D. Ga. Sept. 16, 2009) ("the Eleventh Circuit has previously held that case law addressing the jurisdiction amount in the removal context is analogous to addressing the issue in a declaratory judgment context"); *Board of Trustees of Laborers Health and Welfare Trust Fund for Northern Cal. v. Doctors Medical Center of Modesto, Inc.*, 2007 WL 2385097 at *4 (N.D. Cal. Aug. 17, 2007) (noting that analysis of subject matter jurisdiction pursuant to Declaratory Judgment Act is analogous to analysis of jurisdiction when a lawsuit is removed to federal court); *Owners Ins. Co. v. Bryant*, 2006 WL 50488, *2 n.2 (M.D. Ga. Jan. 9, 2006) (justifying reliance on removal cases to examine jurisdictional amount in declaratory judgment action on ground that "the Eleventh Circuit has recognized that these two contexts are analogous for purposes of determining whether the amount in controversy requirement is met").

documentation in the state-court action, and not Metropolitan's conclusory allegations in its declaratory judgment complaint, that govern for purposes of this jurisdictional inquiry.  *See, e.g., Greenberg*, 134 F.3d at 1252-54 (ignoring insurer's jurisdiction allegation that "the matter in controversy exceeds the sum of $50,000.00" in declaratory judgment complaint, and instead focusing on underlying state-court lawsuit, for purposes of assessing § 1332 jurisdiction); *Knoblett*, 561 F. Supp.2d at 1257-58 (disregarding insurer's claim in declaratory judgment complaint that "amount in controversy appears to exceed ... the sum of $75,000.00" where "the value that State Farm attaches to the claims in the state action is one of its own concoction").  Of course, the Marengo County Complaint values the amount in controversy at less than $75,000.

Upon being confronted with these jurisdictional concerns in the Show Cause Order, Metropolitan does not contend that the Marengo County Action was removable.  To the contrary, Metropolitan readily acknowledges that Thompson's damages allegations in the underlying action "effectively prevent[ed] the removal of that case to federal court." (Doc. 12, at 3.)  The problem lies in Metropolitan's attempt to use the declaratory judgment mechanism to accomplish indirectly that which it cannot do directly (*i.e.*, to have the validity of Thompson's claims be adjudicated in federal court).  In an effort to meet its burden of showing that jurisdiction exists, Metropolitan argues that while a sum below $75,000 may be all that "Thompson seeks to recover at this point in time," she might ask for more later.  (Doc. 12, at 2.)  However, it is black-letter law in this Circuit that the mere possibility "[t]hat plaintiff *might* ask for or recover more *after* removal is not sufficient to support jurisdiction." *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1097 n.13 (11th Cir. 1994).[8]  Likewise, Metropolitan takes Thompson to task for failing to volunteer that she will not accept a damages award of greater than $75,000.  But the Eleventh Circuit has

---

[8]     More broadly, it is well-settled that the amount in controversy is judged as of the time the complaint is filed.  *See, e.g., Clark v. State Farm Mut. Auto. Ins. Co.*, 473 F.3d 708, 711 (7th Cir. 2007) ("[t]he amount in controversy requirement ... must be determined by the district court at the beginning of the suit"); *Stewart v. Tupperware Corp.*, 356 F.3d 335, 338 (1st Cir. 2004) (for purposes of applying amount in controversy test, "a court must look at the circumstances at the time the complaint is filed"); *Greenberg*, 134 F.3d at 1253-54 (amount in controversy and other jurisdictional facts "must be judged as of the time the complaint is filed").  Yet Metropolitan would depart from this clear standard by predicating federal jurisdiction on speculation as to what Thompson might ask for or recover sometime in the future, instead of what she is asking for today.

held that such an omission does not, in and of itself, give rise to § 1332 jurisdiction.  *See Williams v. Best Buy Co.*, 269 F.3d 1316, 1320 (11th Cir. 2001) (noting that there are several reasons why a plaintiff might refuse to stipulate that her claims do not exceed $75,000, such that "a refusal to stipulate standing alone does not satisfy Best Buy's burden of proof on the jurisdictional issue").  Finally, Metropolitan correctly notes that Thompson's request for damages below the jurisdictional threshold does not preclude her under Alabama law from accepting a higher amount should the jury award it.$^9$  But this point is jurisdictionally irrelevant.  Under Metropolitan's theory, "anytime a plaintiff sued for less than the jurisdictional amount but there remained even a possibility that she would amend her claim or be awarded more than she pleaded, jurisdiction would exist.  This approach would unacceptably broaden removal jurisdiction ... [and] allow state rules of procedure to determine when federal jurisdiction existed."  *Burns*, 31 F.3d at 1096-97.

In short, all of Metropolitan's arguments advanced in favor of the jurisdictional amount being satisfied have been unequivocally rejected by the Eleventh Circuit in the removal context.  Metropolitan has proffered no theory or legal authority to support the proposition that it is entitled to evade those well-established principles here.  To the contrary, given the recognized comparability of jurisdictional amount analysis in both the removal and the declaratory judgment contexts in cases like *Federated Mutual* and *Knoblett*, it is entirely proper to apply principles gleaned from the removal setting in assessing the amount in controversy in declaratory judgment actions such as this case.  Accordingly, Metropolitan (as the party asserting federal jurisdiction based on the value of the underlying lawsuit) bears the burden of coming forward with a document, "be it the initial complaint or a later received paper," that "unambiguously establish[es] federal jurisdiction."  *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1213 (11th Cir. 2007).  Metropolitan having failed to do so, or otherwise to demonstrate that jurisdiction is present, neither plaintiff "nor the court may speculate in an attempt to make up for [the

---

$^9$    *See, e.g., General Motors Acceptance Corp. v. Covington*, 586 So.2d 178, 183 (Ala. 1991) ("an amount of recovery requested in the pleadings does not prohibit the jury from awarding the plaintiff what it views as an appropriate award based on the facts and evidence presented"); Rule 54(c), Ala.R.Civ.P. (providing that judgment shall grant relief to which party is entitled, "even if the party had not demanded such relief in the party's pleadings").

pleadings'] failings." *Id.* at 1215.

      Lacking persuasive legal grounds for asserting that federal jurisdiction attaches, plaintiff falls back on a policy/equity argument that it is unfair for Thompson to be able to use carefully crafted damages allegations in the Marengo County Action to frustrate litigation of this dispute in federal court "without a corresponding limit or cap on the damages she could be awarded." (Doc. 12, at 3.) According to Metropolitan, "[s]uch a result is contrary to public policy and could have far reaching implications that essentially block access to the federal courts for many parties ...." (*Id.*) The deficiencies in that line of reasoning are twofold. First, the Eleventh Circuit has made it clear through decisions like *Williams* and *Burns* that there is nothing untoward about a plaintiff asking for an amount below the jurisdictional threshold without conclusively capping any award below that figure. In this case, these principles are magnified, inasmuch as Metropolitan does not suggest that it has ever sought to pin down Thompson to a particular maximum damages amount via requests for admissions or otherwise, much less that Thompson has rebuffed those efforts.[10] Second, to the extent that public policy considerations are implicated by the procedural posture of this action, they cut against Metropolitan's interests. After all, Metropolitan has taken an admittedly non-removable state-court insurance dispute, and has sought to multiply the proceedings by filing a duplicative federal lawsuit embracing the same issues under the guise of the Declaratory Judgment Act. Public policy does not smile on circumvention of statutory limitations on removal and creation of redundant and competing proceedings in multiple fora by discarding an underlying plaintiff's amount-in-controversy allegations and supplanting them with a speculative figure of the insurer's own concoction in

---

      [10] To expound on that point, Metropolitan is incorrect to suggest that it is being wrongfully deprived of a federal forum based on artful pleading by plaintiff in state court, even though the real amount in controversy exceeds $75,000. Obviously, a state-court defendant in Metropolitan's position may avail itself of available discovery mechanisms in state court to explore the plaintiff's damages allegations. To the extent that those discovery procedures yield information that supports removal under the standards enunciated in *Lowery*, Metropolitan will be free to remove the Marengo County Action at that time, provided that it does so within the temporal constraints of 28 U.S.C. § 1446(b). What Metropolitan cannot do, however, is manufacture federal jurisdiction from the notion that Thompson's very specific amount-in-controversy allegations should be cast aside because of the conjectural possibility that at some time in the future she may ask for or accept a greater amount in damages.

federal court. *See generally Texas Employers' Ins. Ass'n v. Jackson*, 862 F.2d 491, 508 n.24 (5th Cir. 1988) ("We decline to authorize an 'end run' around removal procedures and jurisprudence by authorizing a party to ignore removal (and its limitations) but nevertheless achieve the same result by filing a federal court declaratory judgment suit ....").

### III.  Conclusion.

For all of the foregoing reasons, the Court finds that Metropolitan has failed to meet its burden of showing that federal jurisdiction exists over this matter, and more particularly has failed to demonstrate that the amount in controversy exceeds $75,000, exclusive of interest and costs.  Accordingly, this action is **dismissed without prejudice** for want of subject matter jurisdiction.[11]

DONE and ORDERED this 25th day of November, 2009.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[11]  In light of this determination, it is unnecessary to reach, and the Court does not reach, the abstention issues identified in Thompson's Motion to Dismiss.